IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAMES JORDANOFF IV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-939-R |
| | ) | |
| DETENTION OFFICER JOSH COFFEY, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Before the Court is Plaintiff's Motion for Attorney's Fees, Doc. 154. Plaintiff James Jordanoff, a former pro se, pre-trial detainee at Cleveland County Detention Center, won a $35,001 judgment on May 9, 2018—$1 in nominal damages and $35,000 in punitive damages—following a jury trial for First Amendment retaliation against Defendant Josh Coffey, a former Cleveland County detention officer. *See* Jury Verdict, Doc. 149. Plaintiff's counsel J. Wes Billingsley ("Counsel") began representing Plaintiff on February 15, 2017, after the Court denied Defendant summary judgment on the retaliation claim. *See* Docs. 83, 94; Doc. 154-2, at 1. Counsel's request for $157,811.75 in fees under 42 U.S.C. § 1988(b) grossly exceeds the Prison Litigation Reform Act's ("PLRA") attorney's fees restrictions, 42 U.S.C. § 1997e(d), and Section 1988(b)'s "reasonableness" requirement for attorney's fees awards. The Court herein rejects Counsel's challenges to the PLRA's applicability and constitutionality before calculating the lodestar from Counsel's billing records, considering the applicable *Johnson* factors, and denying Counsel's remaining requests for additional fees. Counsel is granted $47,764.10 in attorney's fees.

1

## I. The PLRA

Counsel challenges the applicability and constitutionality of the PLRA—which applies to "action[s] . . . brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail," 42 U.S.C. § 1997e(d)(1)—because it imposes four potential limits on Counsel's attorney's fees award: (1) a reasonableness and tailoring requirement ensuring that fees are for work directly tied to the prisoner's relief, *id.*; (2) "a portion of the judgment (not to exceed 25 percent)" must be allocated to satisfy an attorney's fees award, with the rest of the award "paid by the defendant," *id.* § 1997e(d)(2); (3) a total cap on the attorney's fees award of 150 percent of the money judgment, *id.* § 1997e(d)(2), *Robbins v. Chronister*, 435 F.3d 1238, 1240–41 (10th Cir. 2006),[1] which would limit Counsel's award to $52,501.50; and (4) the award must be "based on an hourly rate" no greater than 150 percent of the rate established under the Criminal Justice Act ("CJA") "for payment of court-appointed counsel," 42 U.S.C. § 1997e(d)(3), which would limit Counsel's hourly rate to $193.50 for work performed February 15, 2017, through May 4, 2017, $202.50 for work performed May 5, 2017, through March 22, 2018, and $210 for

---

[1] The Court agrees with the Tenth Circuit's observation that the PLRA's language—"If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant," 42 U.S.C. § 1997e(d)(2)—is "inartful," if not outright nonsensical. *Robbins v. Chronister*, 435 F.3d 1238, 1240–41 (10th Cir. 2006). In isolation, it only specifies who pays the attorney's fees award if it "is not greater than 150 percent of the judgment," which would allow the Court to impose an award on Defendant greater than that amount. However, the Tenth Circuit and seemingly every other circuit to consider the issue have found otherwise, that the provision *does* impose a 150 percent cap, because the first reading would render the provision's "150 percent" sentence meaningless. *See Robbins*, 435 F.3d at 1240–41 ("Mr. Robbins does not contest that the statute's plain language imposes a 150% fee cap . . . . Accordingly, the plain statutory language limits the award of attorney fees to $1.50."); *Wilkins v. Gaddy*, 734 F.3d 344, 349 (4th Cir. 2013); *Royal v. Kautzky*, 375 F.3d 720, 725 (8th Cir. 2004); *Johnson v. Daley*, 339 F.3d 582, 583 (7th Cir. 2003); *Walker v. Bain*, 257 F.3d 660, 665–67 (6th Cir. 2001); *Collins v. Montgomery County Bd. of Prison Inspectors*, 176 F.3d 679, 683 (3d Cir. 1999); *Blissett v. Casey*, 147 F.3d 218, 220 (2d Cir. 1998); *Boivin v. Black*, 225 F.3d 36, 38 (1st Cir. 2000).

work performed thereafter.[2] Counsel seeks a $157,811.75 award, which includes his original request and supplement accounting for work expended on attorney's fees litigation, for 304.4 hours at a $350 hourly rate and 1.5 multiplier enhancement of the lodestar amount. *See* Doc. 154; Doc. 154-2; Doc. 162-2.

The PLRA clearly applies to Plaintiff's suit, despite that he was no longer a "prisoner" at Cleveland County Detention Center by the time his suit went to trial.[3] Before Counsel raised any issue with the PLRA's application, the Court applied the PLRA to Plaintiff's suit to bar recovery of compensatory damages for non-physical harm. *See* Doc. 120. The statute remains applicable to this attorney's fees issue because the "prisoner" provision depends on a plaintiff's status at time-of-filing. 42 U.S.C. § 1997e(d)(1). The statute refers to "any *action brought* by a prisoner who is confined to any jail," which the Tenth Circuit has reasonably read to mean "at the time he brought the action." *Id.* (emphasis added); *Robbins*, 435 F.3d at 1240; *see Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 795 (11th Cir. 2003) ("[T]he term 'brought' as used in § 1997e(d)'s 'in any action brought' language means filed."). Counsel incorrectly asserts that Plaintiff's action was "brought by a non-prisoner civil rights litigant." Doc. 162, at 3. Plaintiff *did* file the action when he was a "prisoner . . . confined to a[] jail," and his subsequent release pre-trial did not affect the PLRA's applicability. 42 U.S.C. § 1997e(d)(1). *See Perez v. Westchester Cty.*

---

[2] The Judicial Conference regularly raises the CJA/PLRA hourly rate to reflect adjustments in the federal employee pay scale. That hourly rate is $129 for work performed January 1, 2016, through May 4, 2017; $132 for work performed May 5, 2017, through March 22, 2018; and $140 for work performed thereafter. *See* 18 U.S.C. § 3006A(d)(1); CJA Guide to Judiciary Policy, Non-Capital Hourly Rates, Vol 7A § 230.16.
[3] It is undisputed that Plaintiff is a Section 1988 "prevailing party." Doc. 158, at 6; *see also* Judgment for Plaintiff, Doc. 150.

*Dep't of Corr.*, 587 F.3d 143, 154–55 (2d Cir. 2009) (explicitly rejecting Plaintiff's "non-prisoner" applicability argument); *Percelle v. Pearson*, No. 12-CV-05343-TEH, 2017 WL 2688073, at *3 (N.D. Cal. June 22, 2017); *Nelson v. Turnesky*, No. 1:04CV00037 JMM, 2010 WL 3655565, at *2 (E.D. Ark. Sept. 13, 2010). *Cf. Harris v. Garner*, 216 F.3d 970, 985 (11th Cir. 2000) ("[N]otwithstanding the fact that [plaintiffs were] released from confinement before the district court entered judgment against them, 42 U.S.C. § 1997e(e) applies with full force and effect to them.").

The Court also rejects Plaintiff's constitutionality argument that the PLRA—which classifies incarcerated and non-incarcerated pre-trial defendants differently for attorney's fees purposes—violates his Fifth Amendment right to equal protection under the law. *See* 42 U.S.C. § 1197e(d), (h). The classification must pass "rational basis review" because incarceration status is not a suspect class and the fee restriction does not infringe on a fundamental right. *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 549 (1983); *Dubuc v. Johnson*, 314 F.3d 1205, 1209 (10th Cir. 2003); *Curley v. Perry*, 246 F.3d 1278, 1285 & n.5 (10th Cir. 2001). The Court therefore presumes the statute to be valid and will sustain the classification so long as it "is rationally related to some legitimate end." *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

That low bar is satisfied here. Every circuit court to confront the question agrees that Congress's limitations on prisoners' ability to recover attorney's fees satisfy rational basis scrutiny. *See Wilkins v. Gaddy*, 734 F.3d 344, 349–51 (4th Cir. 2013); *Johnson v. Daley*, 339 F.3d 582, 583 (7th Cir. 2003) (en banc); *Jackson v. State Board of Pardons &*

*Paroles*, 331 F.3d 790 (11th Cir. 2003); *Walker v. Bain*, 257 F.3d 660, 667–70 (6th Cir. 2001); *Foulk v. Charrier*, 262 F.3d 687 (8th Cir. 2001); *Boivin v. Black*, 225 F.3d 36 (1st Cir. 2000); *Madrid v. Gomez*, 190 F.3d 990 (9th Cir. 1999). Granted, these cases do not explicitly deal with the distinction between *pre-trial defendants* who are incarcerated and not incarcerated, but their logic remains applicable to Plaintiff's suit:

> It was not irrational for Congress to believe that inmates have certain litigation advantages and certain incentives to file lawsuits not shared by non-prisoner plaintiffs. Inmates are provided with the necessities of life at state expense; they receive "free paper, postage, and legal assistance"; and they may have greater amounts of free time in which to prepare their claims. *Roller v. Gunn,* 107 F.3d 227, 234 (4th Cir. 1997). Furthermore, prisoners might see legal proceedings as a "means of gaining a short sabbatical in the nearest Federal courthouse," *Anderson,* 407 F.3d at 676 (internal quotation marks omitted), or as a tool to "intimidate[e] members of the prison staff," *Hadix v. Johnson,* 230 F.3d 840, 844 (6th Cir.2000). Congress was entitled to conclude that this mix of advantages and incentives finds no analogue outside prison walls.

*Wilkins v. Gaddy*, 734 F.3d 344, 350 (4th Cir. 2013). The PLRA is therefore both applicable and constitutional as applied to Plaintiff, and the Court is bound by its four attorney's fees restrictions.

## II. Counsel's Request

Subject to the PLRA's restrictions, the Court may award Counsel "a reasonable attorney's fee" award to cover the costs of successfully litigating Plaintiff's First Amendment claim under Section 1983. 42 U.S.C. § 1988(b). The starting point for assessing reasonableness is the lodestar method, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," after which the Court turns to the factors laid out in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–

5

19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Counsel's proposed $350 hourly rate is above the statutory maximum and "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). The PLRA's hourly rate limit—$193.50 to $210 at different periods in Counsel's representation—may be a reasonable rate for experienced civil rights attorneys in the area, but Counsel lacks any experience in civil rights litigation, and most of his practice is devoted to unrelated state court matters.[4] *See id.* ("Lawyers working outside their fields of expertise may deserve an hourly fee lower than their normal billing rate because of their lack of experience in the civil rights field."); 42 U.S.C. § 1997e(d)(3); Doc. 158, at 8–11; Docs. 158-1, 158-2, 158-3. Accordingly, the Court sets $190 as the reasonable hourly rate for Counsel's services.

Next the Court turns to which hours were "directly" and "reasonably expended on the litigation." *Hensley*, 461 U.S. at 433; 42 U.S.C. § 1997e(d)(1). Counsel's billing entries are inflated with travel time and generally excessive. Counsel seeks to bill twenty-one hours of travel time because he resides nearly an hour and a half from the federal

---

[4] Counsel does not dispute his civil rights inexperience, and his affidavit merely offers a general statement that "[a] significant portion of [his] practice over the past fifteen (15) years has been consistently devoted to the representation of individual plaintiffs in vindication of their personal rights." Doc. 154-1, at 2. Being a plaintiff's attorney does not necessarily provide expertise in trying a Section 1983 suit. For example, while the Court is satisfied that Counsel is a capable trial attorney, his excessive billing records devoted to research in a relatively simple case suggest an unfamiliarity with this area of the law. *See* Doc. 154-2; Doc. 158, at 12–14. This unfamiliarity is also reflected in Counsel's failure to address the PLRA's attorney's fees restrictions until his reply brief, which also wastefully necessitated supplemental briefing.

courthouse in Oklahoma City. The time and expenses associated with traveling to court hearings and case matters are compensable in "unusual cases only." *Ramos*, 713 F.2d at 559. This is one such case. Once the Court denied Defendant's summary judgment motion on Plaintiff's retaliation claim, Judge Mitchell granted Plaintiff's fourth motion to appoint counsel and requested legal representation for Plaintiff through the Federal Bar Association; it took over three months to find someone before Counsel agreed.[5] *See* Docs. 83, 94. Nonetheless, compensation at the full $190 rate for each time Counsel travelled to and from Oklahoma City ($570) would produce a windfall, and the Court instead will allow Counsel to recoup half the hourly rate, $95, for Counsel's twenty-one hours spent traveling. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 559 n.8 (2010) (approving a fifty-percent cut of the hourly rate for travel hours, "Section 1988 was enacted to ensure that civil rights plaintiffs are adequately represented, not to provide . . . a windfall.").

The Court also finds Counsel's billing records excessive. They reflect more time than necessary drafting unopposed motions, familiarizing himself with local rules, reviewing Court orders, conferencing with Plaintiff and his mother, and conducting clerical tasks. *See* Doc. 154-2; Doc. 158, at 15–18. Accordingly, a 15% reduction of non-travel fees is appropriate. *See Perdue*, 559 U.S. at 548; *Ramos*, 713 F.2d at 557.

As to Counsel's argument that the "*Johnson* factors . . . . weigh in favor of an enhancement," the Court finds that the lodestar calculation above sufficiently accounts for

---

[5] Granted, Counsel knowingly took on the expense of litigating in Oklahoma City, but the Court appreciates that Counsel agreed to represent a pro se plaintiff lacking in physical injuries, meaning the chance for significant recovery was slim.

7

each of the *Johnson* factors. *See Ramos*, 713 F.2d at 552, 556–58 (citing *Johnson*, 488 F.2d at 717–19). To address just a few of the relevant factors, Counsel's time and labor involved in litigating one claim of First Amendment retaliation was far from "extensive," and other than the unique issue regarding the unavailability of compensatory damages under the PLRA for non-physical harm, this case was predominantly fact-driven and straightforward (hence the day-and-a-half long trial). Doc. 154, at 16. This explains why Counsel had no problem maintaining an active docket of other cases while representing Plaintiff. *See* Doc. 158, at 22–23; Doc. 158-1. An enhancement for "superior performance and results" is only "permitted in extraordinary circumstances," and Counsel has not overcome the "strong presumption that the lodestar is sufficient." *Perdue*, 559 U.S. at 546.

Lastly, while "out-of-pocket costs not normally absorbed as part of law firm overhead may be reimbursed under 42 U.S.C. § 1988," the Court declines to award costs on top of the $2,661.99 of taxable costs that Counsel already recovered under 28 U.S.C. § 1920. *Ramos*, 713 F.2d at 559. *See* Doc. 165. Counsel fails to explain why his costs should not be absorbed as overhead, and Defendant raises serious concerns that Counsel has double-counted certain expenses between his Bill of Costs and the Motion for Attorney's Fees. *See* Doc. 158, at 23–23. *Compare* Doc. 151 *and* Doc. 154-2, at 7–11. The Court will not parse these records to correct Counsel's errors when he has not even attempted a basic showing that these costs are "reasonable" and "normally itemized and billed in addition to the hourly rate." *Ramos*, 713 F.2d at 559.

### III. Conclusion

Counsel worked 304.4 total hours, 21 travelling and 283.4 representing Plaintiff. The Court subtracts 10.5 hours of travel time and reduces the non-travel time by 15% to 240.89 hours. This leaves 251.39 hours at a $190 rate, totaling $47,764.10 in attorney's fees for Counsel. Plaintiff's Motion for Attorney's Fees, Doc. 154, is GRANTED in part and denied in part, such that Plaintiff is ORDERED to transmit 25% of the judgment, $8,750.25, to Counsel as partial payment of Counsel's attorney's fees award, and Defendant is ORDERED to pay Counsel the remaining $39,013.85. *See* 42 U.S.C. § 1997e(d)(2).

IT IS SO ORDERED this 10th day of July 2018.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE